ROGERS *v.* BURLINGTON.

1. Where a demurrer to a declaration in the Circuit Court is improperly sustained, and judgment is rendered accordingly, the case may be re-examined here upon a writ of error without any formal bill of exceptions.

2. Power "to borrow money for *any* public purpose" gives authority to a municipal corporation to borrow money to aid a railroad company, making its road as a way for public travel and transportation; and, as a means of borrowing money to accomplish this object, such municipal corporation may issue its bonds, to be sold by the railway company, to raise the money.

3. Power to issue the bonds being shown, the municipal corporation, as against *bonâ fide* holders of them for value, is estopped to deny that the power was properly executed.

THE act of incorporation of the city of Burlington, in Iowa, vested the government and legislative power of the city in a city council, composed of the mayor and a board of aldermen. In addition to conferring various police powers, it authorized the city council to establish and organize fire companies, and provide them with proper engines, and such other instruments as might be necessary to extinguish fires; to establish and construct landing-places, wharves, docks, and basins within the city; to cause all grounds within the city, where water should at any time become stagnant, to be raised, filled up, or drained; and to cause to be opened, paved, repaired, or improved, any street, lane, alley, market-space, public landing, or common. The act then provides, in its 27th section, as follows:

"That whenever, in the opinion of the city council, it is expedient to *borrow money* for any public purpose, the question

shall be submitted to the citizens of Burlington, the nature and object of the loan shall be stated, and a day fixed for the electors of the said city to express their wishes; the like notice shall be given as in cases of an election. The loan shall not be made unless two-thirds of all the votes polled at such election shall be given in the affirmative."

Assuming to act under this section, the city council, on the 23d of June, 1856, passed

"*Ordinance No.* 44.

'An ordinance to authorize a *loan of city bonds* to the Burlington and Missouri River Railroad Company, &c.

"Whereas, at a meeting of the city council, held on the 19th of May, 1856, a resolution was adopted, authorizing the mayor to call an election, and to submit the question, whether or not the city *issue and lend to the Burlington and Missouri River Railroad Company* $75,000, in the *bonds* of said city; said bonds payable in twenty years from date of issue, with an interest of 10 per cent. *per annum*, and to be secured by the first mortgage bonds of said company, &c. And whereas the said election was duly and legally held on the 2d of June, 1856, and the said question was legally decided in favor of the same, whereby said loan is duly authorized to be made. Therefore,

"*Be it ordained, by the City Council of the City of Burlington,*

"1st. The bonds of the city, to the extent of $75,000, and in such amounts as the mayor may direct, bearing interest, and payable as aforesaid, and duly signed, sealed, and authenticated, and with coupons for interest, be issued by said city.

"2d. That the mayor execute, with the said company, a contract of loan thereof, taking therefor the obligation of said company, and as collateral security therefor the mortgages aforesaid, and deliver said bonds to said company, and receive said mortgages."

Under the authority of this ordinance, bonds of the city to the amount of $75,000 were issued. The bonds were coupon bonds in the ordinary form; except in so far, perhaps, as they declared on their face that they were issued, by the city of Burlington, under Ordinance 44, to authorize a loan of city bonds, to the amount of $75,000, to the Bur-

lington and Missouri Railroad Company, and as they contained a copy of the ordinance printed at large upon their back.

Certain of these instruments having got, after this, into the hands of one Rogers, a *bonâ fide* holder for value, and the interest being unpaid, he brought suit in the Circuit Court for Iowa to recover it.

The defendant demurred, among other grounds, on the following:

1st. That the petition did not aver nor show that the city had any authority to issue the bonds therein described.

2d. That the bonds on their face showed that they were not issued for any municipal purpose, but as a loan of the credit of the city to the Burlington and Missouri River Railroad Company.

3d. That there was no law of the State of Iowa authorizing the city to issue such bonds, or to lend her credit to any railroad company.

The demurrer was sustained, and judgment rendered for the defendant. To review this judgment, the case was brought here on writ of error.

*Messrs. Ewing, Browning and Phelps, for the City of Burlington:* The question before the court arises on demurrer, and is a precise one. We assert that the city had no authority to issue the bonds sued upon; and that, having been issued without authority, they are null and void, and cannot be recovered upon. More particularly, our position is, that this is not a case of the irregular and informal execution of an admitted power, but the performance of an act *without power;* one, therefore, which no formality of execution can validate.

1. The well-settled and familiar principle of law is, that a corporation can bind itself only in pursuance of the powers given by the act of incorporation, and not otherwise.*

---

* Dartmouth College *v.* Woodward, 4 Wheaton, 636; Augusta *v.* Earle, 13 Peters, 584; Runyan *v.* Lessee of Costar et als., 14 Id. 129; Perrine *v.* The Chesapeake and Delaware Canal Company, 9 Howard, 184.

2. And all persons dealing with a corporation are bound to take notice of the extent of its powers. They are bound, at their peril, to know whether the corporation has competent authority to make the contract.

3. It is a further well-settled rule of English and American law, that every corporation is *limited, as to its powers, by the objects to be accomplished*—to the sphere of action prescribed by its charter.*

4. And these principles are as applicable to public as to private corporations—to municipal as to commercial.

5. Moreover, the powers of a corporation can never be extended, by implication, beyond the objects of its creation. If a clause of its charter be susceptible of two constructions, one limiting it to the purposes of its creation, and the other extending its powers to objects foreign to the general scope of its charter, the former is to be adopted.†

6. And if a corporation exceeds its powers, and makes contracts, and issues evidences of indebtedness, not authorized by its charter, such contracts and evidences of indebtedness are void, and cannot be enforced against the corporation.‡

7. In this charter, section 27 authorizes *borrowing* money for *public purposes*. But the words used are to be construed as referring to the powers elsewhere granted by the charter; and this section was intended to enable the city to exercise the powers conferred by the charter, or rather to prevent their defeat for want of cash on hand, and not as a sweeping authority to borrow money at their discretion for any purpose whatever. Moreover: A railroad company is a private corporation, and borrowing money to lend to *it* is not borrowing money for a public purpose.

---

* Ohio Life Insurance and Trust Company *v.* The Merchants' Insurance and Trust Company, 11 Humphreys, 19; Broughton *v.* Salford Water Works, 3 Barnewall & Alderson, 1; Beatty *v.* Lessee of Knowler, 4 Peters, 169, 171.

† Perrine *v.* The Chesapeake and Delaware Canal Company, 9 Howard, 185.

‡ Attorney-General *v.* Life and Fire Insurance Company, 9 Paige, 476; Bank of Chillicothe *v.* Dodge, 8 Barbour, Supreme Court, 233.

8. But, even if it were admitted that the city of Burlington had authority to borrow money for other objects than than those pertaining to the good order and government of the city, such admission would not uphold these bonds. These were issued on *a contract of lending—not of borrowing.* It was a lending of the credit of the city to a railroad corporation; not borrowing money for any purpose whatsoever, either public or private. Power given to a corporation to *borrow* money, does not include the power *to lend* either its money or its credit.*

9. The cases on county and city bonds heretofore considered by this court—*Mercer County* v. *Hackett; Gelpcke* v. *City of Dubuque,†* *and others*—have been decided against the corporations resisting payment, mainly on the ground that the bodies issuing the bonds were *estopped* from making the defences which they sought to interpose. In none of these cases, however, was it a question of *power;* but a question, whether a power, *admitted to exist,* had been executed with technical precision. In all of them the bonds recited that the requirements of the law had been complied with. The cases were applications of the rule, that where a corporation acts within the sphere of its general authority, but fails to comply with some formality or regulation which it should not have neglected, but which it has chosen to disregard, it is estopped to deny recitals of conformity to the law, upon which others have been induced to act.‡ Here, however, the objection is not to the mode and manner of executing a power, but that there is a total defect of power. If so, there *can* be no estoppel. No formality of execution, however exact, can give validity to an act which the corporation had no right, under the law, to do; there being no estoppel against a legal disability.§

---

* Colman *v.* Eastern Counties Railway Company, 10 Beavan, 1 to 14; The Caledonian Railway Company *v.* The Hellensburg Harbor Trustees, 39 English Law and Equity, 28; Smith *v.* The Alabama Life Insurance and Trust Company, 4 Alabama, 561.

† 1 Wallace, 83, 175.

‡ See Cincinnati City *v.* Morgan, *supra,* 275.

§ Fairtitle *v.* Gilbert, 2 Term, 169.

10. The bonds show upon their face—in the recitals, we mean, upon them—the object for which they were issued. Had they been obligations, without explanatory recitals, they might have been presumed to be for a lawful consideration; issuable within the corporate powers; and, under decisions of this court, the city would have been estopped to show the contrary. But they show that they were made, not as a means of borrowing money, or securing the payment of money borrowed for any purpose public to the city, in the sense in which the statute giving the power must be construed, but as a loan to a railroad company, with which the city had no connection, and with which, as a matter of fact, it does not appear to have had the power to connect itself.

Of course, all parties had notice of the charter of the city; a public act. We need not enlarge on that point.

*Mr. F. A. Dick, contra, for the bondholder, Rogers, plaintiff in error,* contended that under numerous decisions made in former years in the Supreme Court of Iowa* (and only departed from of late years), as well as by not less numerous ones made in the last two years in this court†—the city had power under its charter to borrow money to subscribe to the stock of the company and issue bonds in payment; that this power to *borrow* money authorized the issue that had been made to the company, and that the bonds were regular, valid, and binding on the city.

Mr. Justice CLIFFORD delivered the opinion of the court.

Corporation defendants were authorized by their charter to borrow money for any public purpose whenever in the

---

* State *v.* Bissell, 4 G. Greene, 328; Clapp *v.* County of Cedar, 5 Iowa, 15; Ring *v.* County of Johnson, 6 Id. 265; McMillen *v.* Boyles, Id. 304; McMillen v. County Judge of Lee County, Id. 391; Games *v.* Robb, 8 Id. 193.

† Gelpcke *v.* Dubuque, 1 Wallace, 175; Mercer County *v.* Hackett, Id. 83; Seybert *v.* City of Pittsburgh, Id. 272; Van Hostrup *v.* Madison City, Id. 291; Meyer *v.* City of Muscatine, Id. 384.

opinion of the city council it should be deemed expedient to exercise that power.

Material conditions annexed to the power, as conferred, were that the question of borrowing, when proposed, should be previously submitted to the citizens of the city, and that the loan should not be made unless two-thirds of all the votes polled at such election should be given in the affirmative.

Pursuant to that authority the defendants voted to issue and lend to the Burlington and Missouri River Railroad Company seventy-five thousand dollars in the bonds of the city, payable in twenty years, with an interest of ten per centum per annum, and to be secured by the first mortgage bonds of the company on the second section of the road. Directions to the mayor of the city, as expressed in the ordinance, were that he should issue the bonds and execute with the company a contract of loan thereof, taking therefor the obligation of the company, and the stipulated mortgage as collateral security for the bonds.

Ordinance under which the bonds were issued was passed on the twenty-third day of June, 1856, and the same is fully set forth in the record.

The action was assumpsit, and the declaration was founded upon certain interest coupons annexed to the bonds, which had become due and payable prior to the commencement of the suit.

Declaration contained twenty counts, and the defendants demurred specially to the entire series. Principal causes shown for the demurrer were:

1. That the declaration did not aver nor show that the city had any power or authority to issue the bonds therein described.

2. That the bonds on their face showed that they were not issued for any municipal purpose, but as a loan from the city to the beforementioned railroad.

3. That there is no law of the State authorizing the city to issue such bonds, or to loan her credit to any railroad.

Parties were fully heard in the court below, and the court

sustained the demurrer and rendered judgment for the defendants.

I. Plaintiff excepted to both those rulings, and a bill of exceptions to that effect, in due form, is exhibited in the record; but it is unnecessary further to advert to it, as it is well settled that the ruling of the Circuit Court in sustaining or overruling a demurrer to a declaration and rendering judgment for the wrong party may be re-examined in this court by a writ of error without any formal bill of exceptions.*

Reason for the rule is, that the error is apparent on the record; and it is generally true that where the error is apparent on the face of the. record a bill of exceptions is unnecessary.†

II. Substance of the defence in this case upon the merits, as presented in argument, may be stated in three propositions:

1. That the defendants, under their charter, had no lawful authority to issue the bonds described in the declaration, and that inasmuch as the bonds were issued without authority they were null and void, and, consequently, the plaintiff cannot in any point of view maintain the suit.

2. That municipal corporations are limited as to their powers by the objects to be accomplished by their creation, and to the sphere of action prescribed in their charters; and that the corporation defendants, under a fair application of those rules, could not borrow money or issue their bonds for the object specified in the ordinance, because such an object was not a public purpose within the meaning of their charter.

3. That the defendants, even if they have authority to borrow money for objects other than those pertaining to the good order and proper government of the city, could not issue the bonds in this case because the contract under which

---

* Gorman et al. v. Lenox, 15 Peters, 115; Suydam v. Williamson, 20 Howard, 436.

† Bennet v. Butterworth, 11 Howard, 669; Slocum v. Pomeroy, 6 Cranch, 221; Garland v. Davis, 4 Howard, 131; Cohens v. Virginia, 6 Wheaton, 410.

the bonds were issued was a contract of lending and not of borrowing, and that the power given to the defendants to borrow money did not authorize them to lend either their money or their credit.

1. Reasonable doubt cannot be entertained that the terms of the charter, if valid, are sufficiently comprehensive to confer upon the defendants the power to borrow money for such a public purpose as that described in the ordinance under which the bonds were issued, unless it be shown that those terms have in some way been shorn of their usual and ordinary signification.

Charter of the defendants was granted on the tenth day of June, 1845, by the Territorial legislature, acting under its organic act.*

Subject to certain exceptions, not material to be noticed, the sixth section of the act provided that the legislative power of the Territory should extend to all rightful subjects of legislation; and there can be no question that the Territorial legislature, acting under that general delegation of legislative power, had the authority to incorporate the defendants and confer upon them, as such corporation, the functions specified in their charter.†

Citation of authorities in support of the proposition seems to be unnecessary, as it is not denied, and, therefore, it may be assumed in the further consideration of the case that the corporate powers vested in the defendants, as expressed in their charter, were legitimately conferred.

Power to borrow money for a public purpose, within the meaning of the provision, is conferred by the charter in express terms, and there is nothing in the constitution of the State which limits the authority so conferred, or renders it invalid. On the contrary, the constitution of the State, as originally adopted, provided that all laws in force in the Territory which were not repugnant to the constitution, should remain in force until they expired by their own limi-

---

* 5 Stat. at Large, 235.

† Vincennes University *v.* Indiana, 14 Howard, 273.

tation, or should be repealed by the General Assembly of the State.*

When the new constitution was adopted it contained no such provision, but the omission was shortly afterwards substantially supplied by a general law re-enacting and reviving all acts in force at the time it went into effect, except such as had been repealed by the General Assembly, or were repugnant to its provisions.†

Validity of the charter, therefore, is established beyond the possibility of a doubt, unless it be assumed that the particular provision authorizing the defendants to borrow money for a public purpose exceeds the constitutional authority of the legislature.

In considering this question it will not be necessary again to advert to the fact that the charter was granted by the Territorial legislature, because it has already been shown that it has the same validity that it would have had if it had been re-enacted by the legislature of the State.

Municipal corporations are created by the legislature, and they derive all their powers from the source of their creation; and those powers are at all times subject to the control of the legislature. Such powers, also, in the absence of any constitutional regulation forbidding it, may be enlarged or diminished, extended or curtailed, or withdrawn altogether, as the legislature shall determine. Construction and repair of highways or streets for public travel within their limits are among the usual purposes of their creation, and the expenses of accomplishing those objects are among their usual and ordinary burdens. Railways, also, as a matter of usage, founded on experience, are so far considered by the courts as in the nature of improved highways, and as indispensable to the public interest and the successful pursuit even of local business, that a State legislature may authorize the towns and counties of the State, through which a railway passes, to borrow money, issue their bonds, subscribe for the stock of the company, or purchase the same

---

* Code 1851, p. 557.    † Code 1860, p. 8.

with the view of aiding those engaged in constructing or completing such a public improvement; and that a legislative act conferring such authority is not in contravention of any implied limitation of the power of the legislature. Decisions to that effect have very much increased in number within the last few years, and are constantly increasing both in the State and Federal courts, until it may be said that the rule here laid down pervades the jurisprudence of the United States.

Exceptional opinions advancing the opposite doctrine may be found, but they cannot be regarded as sound, in view of the fact that the weight of authority is very greatly the other way.

Printed argument of the plaintiff shows that the Supreme Court of the State for a series of years held the same views, as appears in some seven or eight of their reported decisions; and it is proper to remark that the reasons given for the conclusions in those several cases are much more satisfactory than those assigned in the more recent decisions which adopt the opposite rule.

Repeated determinations of this court, embracing a period of ten years, have expressed the concurrence of the court in the general current of the decisions upon the subject in the State courts, and it is vain for parties to expect that the court, in the face of those recorded judgments, can come to any different conclusion. Recent as many of those decisions are, it seems unnecessary to incumber the opinion with the names of the cases, or to reproduce the reasons assigned as the basis of the respective judgments. Irrespective of the State decisions it is quite obvious that the decisions of this court control the question under consideration, and, consequently, that no further remark upon the proposition is necessary, except to say that the decision in the case of *Gelpcke* v. *The City of Dubuque*,* although the opinion of the court contains a reference to other statutes, was chiefly founded upon the construction of a provision in the charter

---

* 1 Wallace, 202.

of that city expressed in the same words as the provision contained in the charter of the defendants. Decision, also, in the case of *Meyer* v. *City of Muscatine*,* is to the same effect. Unless, therefore, it be assumed that no prior deci-, sion of this court can furnish the rule in a subsequent controversy, it would seem that the present case is controlled by those decisions.

2. Second proposition submitted is, that the defendants could not borrow money or purchase bonds in aid of the improvement specified in the ordinance, because such a work is not within the usual and ordinary objects to be accomplished by a municipal corporation, and consequently was not a public purpose within the meaning of that phrase as employed in the charter of the city. They admit that the construction of a railroad is a public improvement, and they insist that the phrase public purpose as employed in the charter must be limited in its signification to such public purposes as fall within the usual and ordinary sphere of municipal corporations. Undoubtedly there is much force in the latter suggestion, and it would seem that as applied to many improvements of great public utility, the proposition may well be conceded. None of the decided cases which maintain the power of the State legislatures to authorize such material aid in the construction of railroads decide or even intimate that the power may be exercised without limit, or be extended to a public enterprise entirely foreign to the general objects which the corporation was created to subserve. Those adjudications are not obnoxious to any such charge, but the theory maintained is, that a railroad is nothing more than an improved highway, and that it is as competent for the legislature to authorize a municipal corporation to furnish material aid in the construction of a railroad connected with the same as to construct a highway.

Regarded in that point of view they are analogous objects, and experience shows that the railroad, as well as the high-

---

* 1 Wallace, 385.

way, is promotive of the highest and best interest of the corporation.*

3. Third proposition is in substance and effect, that the defendants, even if they could borrow money for the object described in the ordinance, could not lawfully issue the bonds in this case, because the contract under which they were issued was a contract of lending and not of borrowing within the meaning of the charter. Evidently the proposition admits that the defendants might borrow money in aid of the improvement described in the ordinance, but the argument is, that in issuing the bonds and delivering them to the company they did not exercise the power in the manner which the charter authorized. Where a municipal corporation was authorized to subscribe to the stock of a railroad company, and to borrow money to pay for the stock subscribed, the Supreme Court of Pennsylvania held, in the case of *Middleton* v. *Alleghany Co.*,† that the issuing of their bonds as a means of making the payment was borrowing money for that purpose, within the meaning of the provision conferring the power, especially as it appeared that the bonds had been received in payment of the subscription. Same court also held in the case of *Reinboth* v. *Pittsburg*,‡ that, where an act of the legislature authorized a municipal corporation to subscribe for stock in a railway as fully as an individual, that the provision gave authority to the corporation to issue their negotiable bonds in payment of the stock, and this court, upon a re-examination of the case, came to the same conclusion.§

Common experience shows that the issuing of bonds by a municipal corporation as material aid in the construction of a railroad is merely a customary and convenient mode of borrowing money to accomplish the object, and it cannot make any difference so far as respects the present question

---

* Redfield on Railways, 533; Rome v. Rome, 18 New York, 38; Prettyman v. Tazewell Co., 19 Illinois, 406; Bushnell v. Beloit, 10 Wisconsin, 195; Reinboth v. Pittsburg, 41 Pennsylvania State, 278.

† 37 Pennsylvania State, 241.                    ‡ 41 Id. 278.

§ Seybert v. Pittsburg, 1 Wallace, 272.

whether the bonds as issued by the defendants were sold in the market by their officers, or were first delivered to the company and were by their agents sold for the same pur-pose. Money was what the company wanted to be expended in the construction of the railroad, and the bonds were is-sued by the defendants to enable the company to accomplish that purpose. Technically speaking, it may be said that the transaction, as between the company and the defendants was, in form, a contract of lending, but as between the de-fendants and the persons who purchased the bonds in the market, it was undeniably a contract of borrowing money; and the same remark applies to the transaction in its practi-cal and legal effect upon all subsequent holders of the securi-ties who have since become such for value, and in the usual course of business.

III. Viewed in that light it is unmistakably a contract of borrowing money in the open market, and the rule that a corporation quite as much as an individual is held to fair dealing with other parties, applies with all its force, and we repeat, that corporations cannot by their acts, representa-tions, or silence, involve others in onerous engagements, and be permitted to defeat the calculations and claims which their own conduct has superinduced.*

Perfect acquiescence in the action of the officers of the city seems to have been manifested by the defendants until the demand was made for the payment of interest. They never attempted to enjoin the proceeding, but suffered the bonds to be issued and delivered to the company, and when that was done it was too late to object that the power con-ferred in the charter had not been properly executed.† Pre-cisely the same objection was made in the case of *Meyer* v. *The City of Muscatine*,‡ but the objection was overruled by this court upon the ground that the object of issuing the bonds was as effectually accomplished by their delivery to the company as they would have been if the defendants

---

* Bissel *v.* Jeffersonville, 24 Howard, 300.

† Knox County *v.* Aspinwall, 21 Id. 544.    ‡ 1 Wallace, 392.

themselves had sold them in the market, and that the obligors were not injured by the transaction.

Judgment of the Circuit Court is reversed with costs, and the cause remanded for further proceedings in conformity to the opinion of the court.

REVERSAL ACCORDINGLY.

Mr. Justice FIELD (in whose opinion concurred the CHIEF JUSTICE, and GRIER and MILLER, JJ.), dissenting.

I am compelled to dissent from the judgment of the court in this case. I am unable to find any authority for the city of Burlington, either in her charter or in any other legislation of Iowa, to issue the bonds, to recover the interest upon which the present action is brought. Municipal corporations differ from private corporations only in the purpose of their creation. They are equally dependent for their existence, and the powers they can exercise, upon the legislative will. They are limited to the powers specifically granted, and such other powers as are necessary to carry into effect those granted. They can exercise none other, and the plea of *ultra vires* may always be interposed as a defence to the enforcement of any contract or obligation not made or incurred within the limits prescribed. And the rule rests upon the most obvious reasons. The corporation consists of all the inhabitants within the corporate limits; they are the corporators. Thus, in the charter of Burlington, the first clause, after defining the limits of the city, declares that " the inhabitants thereof shall constitute a body corporate and politic." The officers of the corporation, the mayor and city council, constituting its legislative body, are merely the public agents of the corporation, and are bound by all the restrictions which bind other agents acting for their principals. The charter is to them the letter of authority, to which every one may look when called upon to consider the validity of their acts. The corporation can only be bound when these agents keep strictly within their prescribed limits.

But this is not all; the power granted must be exercised substantially in the mode designated. The adoption of the mode to this extent is essential to the validity of any act done. If the charter provide that a measure shall be authorized by ordinance of the council, it cannot be authorized by resolution of that body; if it prescribe a sale at auction, a sale in any other manner is void; if it authorize a borrowing of money upon a vote of the citizens, the money cannot be borrowed in any other way. In all such cases the mode becomes the measure of the power. This is too obvious to require argument; and so are all the adjudications. Thus, in *Head* v. *The Providence Insurance Company*,* Mr. Chief Justice Marshall, in speaking of bodies which have only a legal existence, says: " The act of incorporation is to them an enabling act; it gives them all the power they possess; it enables them to contract, and when it prescribes to them a mode of contracting they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated."†

But still more: the power granted must be exercised for the purpose designated; it is limited to the objects to be accomplished, to the sphere of action prescribed by the charter. If it be given for the construction of a city building, it cannot be exercised for the construction of a city railroad; if it be allowed for the establishment of a public library, it cannot be exerted for the opening of a public market; if it be conferred to enable the corporation to borrow money, it cannot be used to enable the corporation to lend money, or to lend its credit.

These observations are legal truisms. They are elementary principles. They are recognized by all the authorities both of England and America. They are controverted in none, and they envelop the present case on all sides.

Here the authority conferred is to *borrow money;* yet no

---

* 2 Cranch, 169.

† McCracken *v.* City of San Francisco, 16 California, 619; The Farmers' Loan and Trust Company *v.* Carroll, 5 Barbour, 649; The New York Fire Insurance Company *v.* Ely, 5 Connecticut, 568.

money was borrowed, but the bonds of the city were lent. Borrowing money and lending credit are not convertible terms. The two things which they indicate are essentially distinct and different. The utmost which can be said is, that the railroad company might have borrowed money on these bonds, and thus the transaction would amount to a borrowing of so much money by the city through the railroad company as its agent. The answer to this suggestion is, that there is no authority to be found for constituting the railroad company the fiscal agent of the city. The company having possession of the bonds might dispose of them at any rate of discount which it deemed proper. Could the legislature have intended that the city should be liable in any event to taxation on the supposition that a public enterprise had been aided by its money to a specified amount, when in fact no such sum was ever given for the enterprise?

The question presented is not a new one. In *Gould* v. *The Town of Sterling*,* a statute of New York had authorized the officers of the town to borrow the sum of twenty-five thousand dollars, and pay it over to the president and directors of a railroad company, to be expended by them in grading and constructing a railroad. Instead of borrowing the money, the officers of the town delivered over the bonds of the town to the company in payment for stock, for which they were authorized by the act to subscribe, and the company sold them at a discount. The question was, whether this was within the authority conferred by the act? Mr. Justice Selden, speaking for the Court of Appeals of New York, in an opinion of marked ability, answers the question in the negative. " It is clearly," says that learned justice, " not within its language. No money was borrowed, and nothing else was authorized by the terms of the act. If, however, what was done was the same in effect as if the money had been borrowed and paid over to the railroad company, the difference in form would not be material. But it is plain that neither in respect to the railroad com-

---

* 23 New York, 458

pany nor the town was its effect the same.   If the statute
had been pursued, the company would have had a sum equal
to the par value of the bonds to expend upon their road.
As it was, they were compelled to sell the bonds at a dis-
count in order to realize the money." . . . . "It is true,
the town did not itself sell the bonds, nor make any sacrifice
upon them.   It transferred them to the railroad company
at par, in payment for stock for which it was authorized to
subscribe.   This, however, does not strengthen the plain-
tiff's case.   It was as much a departure from the terms of
the statute as if the town had itself sold the bonds at a dis-
count, and was equally inconsistent with the object and
intent of the act, which was, that the railroad company
should receive a sum equal to the amount of the debt in-
curred by the town, to expend upon the road, in the com-
pletion of which the town was supposed to have an interest.
There is, therefore, in this case, not only a literal but a sub-
stantial difference between the course pursued and that
pointed out by the statute.   It follows that the bonds were
illegally issued, and were, consequently, void in the hands
of the railroad company; and as the referee has expressly
found that the plaintiff became the purchaser with full
knowledge that the bonds had not been issued for money
borrowed, but in payment for the stock of the company, he
is in no better situation than the railroad company itself."

I can add nothing to this language, or to the cogency of
the reasoning of the learned judge.   Every word is applica-
ble to the case under consideration.

I might proceed and show that the purpose for which the
bonds in this case were issued, was not within the objects
to be accomplished by the charter of incorporation; that
those objects were such as are usually contemplated in the
creation of a municipal corporation,—the establishment of a
local government, the securing of peace, good order, and
health within the corporate limits, and the promotion of
such measures as would conduce to the general good of the
municipality, and that the power to borrow money was re-
stricted to the purposes declared.   But it is unnecessary to

pursue the matter further. When the authority to borrow money is made to cover a case of lending credit, it is vain to contend that the "public purpose" prescribed by the charter was limited to any of the purposes for which such charter was created.

This is not a case where the doctrine of estoppel has any application. It is not a case where the purchaser of the bonds was misled by any recitals of conformity to law. Here the statute and the ordinance of the city of Burling-ton, under which authority to issue the bonds was assumed to exist, are both printed in full in the indorsements upon the bonds; and the ordinance is also referred to on their face. But if this were not so the case would not be changed, as the statute did not authorize the issue of the bonds. No formality of execution, and no extent of recitals could give validity to instruments thus issued. The public agents of the city could not cure the inherent defect in their action arising from want of power, by any amount of representation that they had the requisite authority.

I am clear that the bonds are void, and that the judgment should be affirmed.

Mr. Justice MILLER:

In addition to what has been said by my brother Field, in all of which I concur, I desire to state, that on the 8th of January, 1866, the Supreme Court of Iowa, by a decision which was unanimous, held the bonds which are the foundation of this suit to be void, on the ground that the charter conferred no authority on the city to lend its credit, and that the transaction in this case was a loan of credit, and not a borrowing of money.