Me. Justice Westcott
delivered the opinion of the court.
Jonathan C. Greeley, a tax-payer and owner of property in the city of Jacksonville, brought his bill in the Circuit Court of the Fourth Judicial Circuit, in Duval county, ai-. leging that the said city had caused án issue of its bonds to be made in an illegal manner; that no record of the proceedings authorizing the issue of the bonds was made at the time they were had; that a part of said bonds have been sold and- have gone into the possession of bona fide purchasers for valuable consideration; that the said city had caused a tax to be assessed upon his property for the payment of the interest and sinking fund obligations purporting to be created by said bonds, and that the Collector of Taxes of said city was proceeding to collect said illegal tax. The plaintiff in his bill prayed for a decree establishing the illegality of the bonds and an injunction restraining the collection of the tax levied.
The defendants filed their answer setting up the circumstances under which the issue of said bonds was had, reciting at length the powers of the city under its charter, as well as the circumstances of their issue by the city.
After hearing upon the bill and answer, the court declined to grant the injunction and directed the dismissal of the bill.
The general question presented here for consideration is, what are the powers of the city of Jacksonville in the matter of issuing these bonds.
Under the general act providing for the incorporation of cities and towns in this State as amended, which was the organic law o£‘ this -municipal corporation at the time of the issue of these bonds, the city of Jacksonville had authority to issue ‘bonds for municipal purpses, after submitting the question to the qualified electors of the city, iu such manner and after such public ffotice as might be deemed necessary by the city council, provided two-thirds of the votes actually cast by the electors be in favor of issuing the bonds and .the amount proposed to be issued.
• It is admitted that the bonds in question were issued for the purpose of carrying out sanitary improvements by the drainage and reclamation of creeks, swamps and ponds around the city, laying off streets and constructing sewers and water-works.
The plaintiff does not here deny that these are municipal purposes. We think they are. Each named purpose looks either to the health or convenience of the residents of the city. All of the named ends to be accomplished-are for their comfort, prosperity and welfare, and* are direct ■methods by which these ends may be accomplished.
It is not here denied by plaintiff ’that an election was held, and that two-thirds of the votes actually cast at the election were in favor of the issue of bonds. The only* question raised by the pleadings is, was the notice of the •election given in conformity to the ordinances of the city regulating the issue of the bonds for the payment of the interest upon which this tax was levied? The plaintiff admits in his pleading that three days notice, by published proclamation of the mayor calling the election, was .given, but insists that under the ordinances of the city five days notice was required. A consideration of the two ordinances covering the subject must determine this question.
The first ordinance relating to the "Subject was entitled’ “An ordinance to provide for the issue of bonds for sanitary, improvements,” and was approved December 28, A. D., 1877. Sections one and two of this ordinance are all of the sections necessary. to be considered, as it is from *51 their provisions that the question stated arises. These sections are as follows:
“Sec. 1. That the mayor is hereby directed to issue his proclamation calling an election to be held by the qualified electors of the city of Jacksonville, according to the last registration, to determine whether or not the city council shall be authorized to issue bonds* of the' city of Jacksonville for ait amount not to exceed fifty thousand dollars, said bonds-to be of such denomitíations, to be payable at such time and place, to bear such rate pf interest, to be subject to such conditions and to be- applied to such purposes as are here5-inafter designated/'
“See. 2: That said election shall be held on the 15th- day of January, A. D., 1878], at such-polling places in the sev* eral wards of the city of Jacksonville, and under the suj peiwision of sueh inspectora-of election as may be hereafter designated by the city cduneil; public notice thereof to be given at least five days previous to said election, and at said election all those voting in favor of bonding, as aforesaid, shall deposit ballots, on which shall be written or printed the Words ‘For Bonds/ and all those opposed thereto shall deposit ballots on which shall be written or printed the words ‘'Against Bonds/ ”
On the 29th of December, A. D. 1877, the mayor, under this ordinance, issued his proclamation calling an election on the 15th day of January, A. D. 1878. Before such election was held, and on the 11th day of January, A. D. 1878, another ordinance on the subject of issuing bonds for municipal-purposes was passed amending.
To show the question raised by the pleadings here, it is only necessary to insert section one of said ordinance. The title of this ordinance and its first section were .as follows:
“An ordinance to be entitled -an ordinance-to amend an ordinance entitled ‘An ordinance to provide for the issue "of bonds for sanitary improvements/ approved December 28, 1877.”
“Be it ordained by the City Council of the city of Jackson^ ville: Section 1. That section 1 of said ordinance be and is hereby amended so as to read as follows:
“Sec. 1. That the mayor is hereby directed to issue his proclamation calling an election to be held by the qualified electors of the city of Jacksonville on the 15th ‘day of January inst., to determine whether or not the city council shall be authorized to issue bonds of the city of Jacksonville for any amount not to exceed two-'hundred and fifty thousand dollars; said bonds to be of such denominations, to be payable at such time and place, to bear such rate of interest, to be subject to such conditions and.to be applied-to such purposes as are hereinafter designated.”
’The second section, of this ordinance amends the third section of the- ordinance of December 28, 1877.
The second section of the ordinance of December 28, 1877, is nowhere amended or changed in express terms, hut it is clear and plain that the requirement of five days notice of election in that section is inconsistent with the requirement of the first section of the amendatory ordinance, as from the date of its passage and approval to the time at which* the election was to be held, five days did not interven#;.
The question is, did the first section of the amendatory ordinance repeal the requirement of five days notice in the ifrrst, and was the notice of three days sufficient ?
Upon this subject there is nothing in the Constitution of this State, or in the organic law of this municipal corporation, its charter, which prescribes any particular method by which the legislative power delegated to this council is to be exercised in the matter of the form in which the amendment or repeal of antecedent ordinances is to be had. To the extent that there is a plain conflict between thiB last exercise of power and the prior ordinance, the former must cease to be operative. Where sueh a clear conflict exists, as in this case, the repeal by implication is as effective as if it is made in express words.
As to this question of notice, however, we do not think it is material whether such notice was given or not, when the rights of a bona fide holder for value of these bonds are concerned. Irregularities of this character in the exercise of a general power in a municipal corporation to issue bonds are not available as against an innocent bona fide holder for value.
In the case of the Commissioners of Knox County vs. Aspinwall et al., (21 How., 544,) it was insisted that the requisite notice of the election had not been given, and that for this reason the vote was not in conformity with the law. . The Supreme Court of the United States in that case remarked that while they will not say that there may not be a direct proceeding to inquire into the facts previously to the execution of the power, and before the rights and interests of third parties attached, but after the authority has been executed‘and the bonds issued and in the hands of innocent holders, it -would be too late, even in a direct proceeding, to call it in question. See also upon this general subject 1 Wall., 384, 175, 291, 292; 3 Wall., 654; 10 Wall., 676.
So far as the matter of failure to make a record of the proceedings of the council at the precise time of their oc-qurrence is concerned, there is nothing in this to affect the validity of the bonds, even in a direct proceeding assailing them, before they reach the hands of a bona fide holder for value. This is but .one evidence of the due passage of the ordinance in question. In this case no question is made of their adoption regularly and properly, and that is enough.
The decree is affirmed.