## ATLANTIC TRUST CO. OF NEW YORK v. TOWN OF DARLINGTON.

(Circuit Court, D. South Carolina. September 4, 1894.)

1. TOWNS—AIDING RAILROAD CONSTRUCTION—CORPORATE PURPOSES.

Act S. C. 1889 (20 St. 503), authorizing a town to issue bonds in aid of the construction of a railroad, is not in conflict with Const. S. C. art. 9, § 8, permitting the legislature to authorize municipal corporations to collect taxes for corporate purposes only.

2. SAME—CONSTRUCTION OF STATUTE.

Act S. C. 1889 (20 St. 503), authorizing a town to issue bonds "in any amount" in aid of the construction of a railroad, will be construed to mean any amount within the constitutional limit of 8 per cent. of the assessed value of its taxable property (Const. S. C. art. 9, § 17), and therefore not in conflict with it.

3. SAME—VALIDITY OF ASSESSMENT.

In determining whether an issue of bonds by a town was in violation of Const. S. C. art. 9, § 17, providing that it shall not exceed 8 per cent. of the assessed value of its taxable property, the assessment prior thereto will be considered valid, though the assessors did not file a report thereof within 10 days, as directed by the town charter, where it was filed soon after, accepted, and acted on, the taxes being collected thereunder.

4. SAME—ASSESSED VALUE OF PROPERTY.

Property of a manufacturing company, not being within the classes of property which may be exempted from taxation under Const. S. C. art. 9, § 8, is to be considered in determining the assessed value of the property of a town, within article 9, § 17, prohibiting any issue of bonds by a town in excess of 8 per cent. of the assessed value of its taxable property.

5. SAME—ISSUE OF BONDS AT PAR.

Where a town agrees to give a certain amount to aid in the construction of a railroad, and such amount is expended in the construction of the road, and the town pays its subscription in its bonds, of the face value

of the amount of its subscription, it does not violate the provision of Act S. C. 1889 (20 St. 503), permitting it to issue bonds in aid of railroad construction,—that no bond shall be sold for less than its par value,—though in return it is given stock in the road, of no marketable value.

Action by the Atlantic Trust Company of New York against the Town of Darlington on interest coupons. Judgment for plaintiff.

Curtis, Smythe & Lee and Knox Livingston, for plaintiff.

Woods & Spain, Mitchell & Smith, and Lord & Burke, for defendant.

SIMONTON, Circuit Judge. This case, by stipulation of counsel in writing, was tried by the court without the aid of a jury.

### Findings of Fact.

The plaintiff is a corporation under the laws of New York. The defendant is a municipal corporation of the state of South Carolina. The railroad now known as the Charleston, Sumter & Northern Railroad had been constructed from a point on the South Carolina Railroad to the town of Sumter, S. C. The town of Darlington made an agreement with the Charleston, Sumter & Northern Railroad Company, looking to the proposed extension of the Charleston, Sumter & Northern Railroad from Sumter, S. C., via Darlington, to Bennettsville, S. C., in which agreement it was provided that the railroad company would build and equip a railroad from Sumter, S. C., via Darlington, to Bennettsville, S. C., and that on completion of the said railroad the town of Darlington would contribute certain aid thereto, in bonds, money, material, etc. The general assembly of South Carolina passed an act to amend an act to alter and amend the charter of the town of Darlington (29 St. at Large, 503), in which, among other things, is the following section:

"Sec. 29. That the said mayor and aldermen may for the purpose of internal improvements, borrow money, issue bonds or scrip therefor, bearing not a greater interest than 7 per cent. payable at such times as they may think advisable, and payable out of the taxes and incomes of said town; provided, said principal of bonds and scrip shall at no time exceed $5,000, except for the purpose of aiding in the construction of railroads, and for that purpose the said mayor and aldermen may issue bonds or scrip in any amount; provided, further, that the right to issue said bonds or scrip shall exist only in a majority vote of the town, as hereafter provided. That no one shall be entitled to vote on said question unless he or she is the owner of property within the corporate limits of said town, and has returned and paid taxes on $100 dollars worth of property the year immediately previous to said voting; and on each $100 worth of property so returned and paid for, the person or persons shall be entitled to one vote. The manner of holding said election shall be provided for by the town council of said town; it is also provided, further, that the time, manner and form and payment of said bonds or scrip shall be provided for by the town council of said town, and that no bond shall be sold for less than its par value."

On the 22d April, 1890, formal articles of agreement were made between the town of Darlington,—the resolution of the town council being set forth at large in the agreement,—and the Central Carolina Land & Improvement Company, a corporation. By this

agreement the land and improvement company bound itself to construct and equip a railroad that should be acceptable to the railroad commissioners of the state of South Carolina, from Sumter, S. C., via Darlington, to Bennettsville, in said state, where a connection with some railroad giving northern outlet could be effected; and in consideration thereof the town of Darlington agreed to turn over to the Central Carolina Land & Improvement Company, upon the completion of said railroad, bonds to run for 30 years, at 5 per cent. per annum, at the rate of $2,000 per mile, not to include sidings and side tracks, from Lynch's Creek to Bennettsville, and to give the Central Carolina Land & Improvement Company a certain tract of land in the town of Darlington, containing 24 acres, and to exempt said railroad from town taxes for a period of five years, and to bear equally with the Central Carolina Land & Improvement Company one-half of all expenses of money expended in obtaining the necessary right of way to Bennettsville. In furtherance of this agreement, another was entered into between these same parties, under which 80 of the bonds described in that agreement, at $1,000 each, with certain securities and obligations mentioned in the schedule annexed to the agreement, amounting to $5,000, were deposited in escrow with the American Loan & Trust Company of New York, which bonds and securities, or such part thereof as was proper, were to be delivered to the Central Carolina Land & Improvement Company upon the performance by them in full of their agreement, to be evidenced by the certificate of the railroad commissioners. The vote of the town was taken, according to the act of assembly. The bonds were prepared, and deposited in escrow with the American Loan & Trust Company, and afterwards with the Atlantic Trust Company, duly substituted as trustee, in escrow, instead of the American Loan & Trust Company; and, upon the certificate of the railroad commissioners that the railroad was in all respects completed, the bonds to the amount of $73,000 were turned over to the order of the Central Carolina Land & Improvement Company, due notice of which was given to the mayor of Darlington by the Atlantic Trust Company, with further notice that the remaining $7,000 of bonds were held to the order of the town. These were subsequently delivered to the town. The Central Carolina Land & Improvement Company assigned these bonds to the Atlantic Trust Company to secure a loan to be procured by the Central Carolina Land & Improvement Company, which loan, to an amount of $75,000, was procured, and this amount was all used by the Central Carolina Land & Improvement Company in the construction of the railway. The Atlantic Trust Company is the holder of 70 of these bonds, and two coupons of interest, in the amount of $6,085.66, being past due and unpaid, payment of which was demanded from and refused by the town, and are now the subject-matter of this suit. These coupons are those due on the 1st day of April, 1892, but calculated as bearing interest on the bonds only from the 1st day of August, A. D. 1892, the date of the completion of the road and the delivery of the bonds, and those due on the 1st day of April, A. D. 1893. The form of the bond was as follows:

"The town of Darlington promises to pay to bearer one thousand dollars on the first day of April, Anno Domini one thousand nine hundred and twenty, with interest thereon at the rate of five per centum per annum, payable annually on the 1st day of April of each year, until maturity, on the presentation of the proper coupons at the office of the treasurer of the town of Darlington, So. Ca., where the principal will be paid at maturity, on the surrender of this bond.    This is one of a series of bonds not to exceed in the aggregate eighty thousand dollars, to be issued to aid in the construction of the Charleston, Sumter and Northern Railroad from Sumter, through the town of Darlington, to the town of Bennettsville.    And in consideration of the said town of Darlington receiving for the said bonds an amount of stock in said railroad equal to the aggregate amount of bonds so received for said purpose by the majority vote of the owners of property within the corporate limits of the said town of Darlington, at an election held on the 7th day of March, A. D. 1890, and in pursuance of an ordinance of the town council of the said town of Darlington dated the 25th day of February, A. D. 1890, passed under authority of an act of the general assembly of South Carolina entitled 'An act to amend an act entitled "An act to alter and amend the charter of the town of Darlington, S. C.," approved 24th December, A. D. 1889,' and is payable out of the taxes and income of the said town of Darlington."

The constitution of the state of South Carolina provides as follows:

"Sec. 17. Any bonded debt hereafter incurred by any county, municipal corporation or political division of this state, shall never exceed eight per centum of the assessed value of all the taxable property therein."    18 St. at Large, p. 687.

Under the charter of the town of Darlington the real property is assessed as follows, under section 17 of the charter:    The mayor and aldermen appoint annually three citizens to make such assessment, who are required to make a report in writing of the assessment made by them, and file the same in the office of the clerk of said town, within the period of 10 days next ensuing upon the date of their appointment as such assessors.    The personal property is returned for taxation by the property owners.    On the 31st January, 1890, the board of assessors was appointed,—no evidence appears as to the day of their notification or qualification,—and made and filed their assessment; not, however, until the 28th day of February after their appointment.    The assessment was accepted, and was finally approved.    The tax levy was made under it, and taxes paid. The lists of real and personal property included the Darlington Manufacturing Company, both its realty and personalty,—its realty assessed at $70,000, and its personalty at $125,000; in all, $195,000. The aggregate of the list of both real and personal property, including the Darlington Manufacturing Company, was $1,019,685.    If that company was excluded the aggregate would be but $824,685. The aggregate of assessment of the real and personal property for the year preceding the issue of these bonds was $607,757, which did not include the Darlington Manufacturing Company.    The assessments for the succeeding years all run above $1,000,000.    By the sixteenth section of the act of incorporation of the town (18 St. 927), the town council have power to impose taxes for the use of the town each year, not exceeding 50 cents on every $100 worth of real and personal property in the town, except that of churches, charitable associations, and institutions of learning.    By the amended

charter (20 St. at Large, 504), the town council, if bonds are issued in aid of railroads, may impose an additional tax to pay the interest on its bonds, which additional tax, however, shall not exceed 50 cents on every $100 of property. The constitution of South Carolina provides for exemption from taxation property used for municipal, literary, scientific, or charitable purposes. Article 9, § 1. The General Statutes of South Carolina (section 169, subd. 23), in force when the Darlington Manufacturing Company was incorporated, provides:

"Any person who since the 1st January, 1872, has invested capital in the manufacture of cotton, woollen or paper fabrics, from iron ores and agricultural implements, within this state, shall for the period of ten years from the date of his investment, be entitled to receive from the treasurer of the state a sum equal to the aggregate amount of state, and from the county treasurer the aggregate amount of county taxes, less the two mills for school purposes, and from the treasurers of all municipal corporations a sum equal to the aggregate amount of municipal taxes, which shall be levied or collected upon the property or capital employed or invested directly in such manufactures or enterprises, not including herein the tax levied upon the land upon which the factories may be erected, the sum of money so to be repaid to be fixed and determined by the comptroller general in accordance with the tax returns, the state tax to be paid by the state treasurer on his warrant, and the county tax by the county treasurer under the order of the comptroller general."

The section was repealed in 1885 (19 St. at Large, 333), but rights acquired under this section thus repealed are not affected by the repeal. The Darlington Manufacturing Company began business some time before 1884. The town of Darlington collected no taxes from it, but the assessments on the property were made. When the bonds of the town of Darlington were delivered under the agreements above referred to, a certificate of stock in the Charleston, Sumter & Northern Railroad Company was made out, in the name of said town, for 730 shares, for the par value of $100 each, and delivered to the town. Afterwards, the town surrendered this certificate, and obtained in its stead other certificates,—one in its own name, for 680 shares, and several in the names of individuals who had agreed to subscribe to the stock of the Charleston, Sumter & Northern Railroad Company. The plaintiff introduced testimony showing that in five cases, at least, the town collected the amount of their subscription from each of these five at par, delivering to them, upon payment therefor, the scrip in the Charleston, Sumter & Northern Railroad, which they had received in part exchange for their original scrip for 730 shares, above referred to. The town acquired the tract of 24 acres by them agreed in the agreement of 22d April, 1890, to be conveyed to the Central Carolina Land & Improvement Company, and duly conveyed the same to the land and improvement company, having paid for the same, acquiring it, the sum of $4,200.

## Conclusions of Law.

The bonds to which the coupons sued on in this case belong were executed for the purpose of completing and equipping a railroad from Sumter, S. C., via Darlington, to Bennettsville, S. C.,

there to meet a northern connection. This railroad has been built, equipped, and is in operation. The northern connection has been effected. The road has been approved and accepted by the railroad commissioners. The entire face value of the bonds—their par value—has been expended in the construction and equipment of this road. This construction and equipment were completed in consideration of the execution and receipt of these bonds. The bonds were delivered in consideration of these results. We are therefore free to discuss the legal question in the case, not embarrassed by considerations which frequently attend cases of this character, —the expenditure of money or the incurring of obligations which failed to secure the end for which the money was expended and the obligations incurred.

The single question of law in the case is, are these bonds valid obligations of the town of Darlington? The validity of the bonds is denied because their issue is in conflict with the constitution of the state of South Carolina. We must meet this question, notwithstanding the fact that these may be negotiable instruments, and in the hands of bona fide holders for value. The principal of estoppel or ratification cannot be applied to a municipal bond issued ultra vires. Town of South Ottawa v. Perkins, 94 U. S. 260; Brenham v. Bank, 144 U. S. 188, 12 Sup. Ct. 559.

The first ground of constitutional invalidity is that the act under which they were issued (A. D. 1889; 20 St. 503) is unconstitutional, in that it authorizes the issue of municipal bonds in aid of the construction of a railroad, and this is not a corporate purpose. The constitution permits the legislature to authorize municipal corporations to assess and collect taxes for corporate purposes (section 8, art. 9), and none other. A municipal corporation is not only a representative of the state, but a portion of its governmental power. It is one of its creatures, made for a specific purpose, to exercise within a limited sphere the powers of the state. U. S. v. Railroad Co., 17 Wall. 322. The powers of a municipal corporation, dependent wholly upon the source whence they are derived, may be enlarged at any time by the legislature. Rogers v. Burlington, 3 Wall. 654. The legislature then determines the purposes for which they have been created, and clothes them with the means of attaining them. These purposes are their corporate purposes. The legislature may declare that corporate purposes may be promoted by affording aid to a railroad. The unchanging course of legislation shows that this is a public purpose as well as a corporate purpose; and, without question, cities, towns, villages, and counties have again and again been clothed with this power. It is true that in Floyd v. Perrin, 30 S. C. 1, 8 S. E. 14, arguendo, the court says that counties have the right to aid in such construction because they have jurisdiction over highways, and a railroad is a highway. But streets in cities. Towns, and villages are also highways; and, although the authority of the county over its highways ends at its boundaries, a county has the right to aid a railroad whose termini are in other counties,—perhaps in other states. Floyd v. Perrin, relied on in argument, does not decide that aid to a railroad cannot

be a corporate purpose. That case only decides this: Townships in South Carolina, being mere territorial subdivisions of land, with no public duty or function whatever, no corporate or public purpose, an act declaring them corporations, and permitting them to sub-scribe to a railroad, is not constitutional. Why? Because, having no corporate purpose, the investment in railroad stock could be used for no purpose whatever. Making them corporations, authorizing them to invest in railroad stock, were but steps,—incomplete steps. To secure the constitutionality of the action, the legislature should have given them a corporate purpose. This it did not do, and the whole thing was void. But cities, towns, villages, and counties have well-defined corporate purposes, which can be pro-moted by such investments. The existence of these corporate pur-poses, and their promotion by aiding railroad enterprises, give them their constitutional character. ' As a conclusion of law this act is not in conflict with section 8, art. 9, of the constitution.

Is it in conflict with section 17, art. 9, because no limit is fixed as to the amount of aid to be given to railroads? The constitution and the act must be read in pari materia. The legislature must be presumed to have enacted the act in view of the constitution. It cannot be assumed that the legislature went in the teeth of the constitution. Such a construction must be put on this act as will reconcile it with the constitution. "Ut res magis valeat quam pereat." We must hold it to mean, "May issue bonds in any amount within the constitutional limitation." As a conclusion of law, the act is not in conflict with section 17, art. 9, in this respect.

· It is said, however, that as a matter of fact the issue of $73,000 of bonds exceeded 8 per cent. of the assessed value of all taxable property in the town of Darlington, and so the issue is void under this seventeenth section of the eighth article of the constitution. The argument is on two lines: First, because the report of the as-sessors was not filed within 10 days, and so there was no lawful assessment for the year 1890, when the issue was made, and the issue must be tested by the assessment of the previous year; second, be-cause the assessment of 1890 includes the real and personal property of the Darlington Manufacturing Company, which is exempt from taxation, and if this be excluded $73,000 will exceed 8 per cent. of the true aggregate. No complaint is made as to the legality of the appointment of the assessors. The act required them to make their return within 10 days. It imposes no penalty and declares no re-sult if this period be exceeded. The return, however, was made not long after the expiration of the 10 days; was accepted by the town counsel; was left open for inspection and protest; was finally confirmed and acted upon. All taxes were collected or enforced under it, and were received and spent by the town council. It has been acquiesced in up to this time. Surely, it does not lie in the mouth of this defendant, the town of Darlington, to say that this assessment, good for every other purpose, is invalid for this single purpose,—the validation of its bonds. "Corporations are as strong-ly bound as individuals are to a careful adherence to truth in all their dealings, and they cannot, by their representations or by silence,

involve others in onerous engagements, and then defeat the calculations and claims which their own conduct has superinduced." Zabriskie v. Railroad Co., 23 How. 381; Moran v. Miami Co., 2 Black, 722. As a conclusion of law, notwithstanding the delay in filing the return of the assessors, the assessment reported by them, for the purpose of this case, is a lawful assessment, and fixes the value of property assessable for taxation.

Was the property of the Darlington Manufacturing Company properly included in the assessed value of all taxable property in the town? It was, unless it was legally exempt from assessment and taxation. The eighth section, ninth article, of the constitution of South Carolina, directs the general assembly to require all the property within the limits of municipal corporations to be taxed for the payment of debts contracted under authority of law, except such property as has heretofore been exempt in said constitution. The only exemptions are of property used for municipal, educational, literary, scientific, religious, or charitable purposes. So, even if the town of Darlington fails to collect the taxes from this manufacturing company, or exempts it by ordinance from taxation, these would be in contravention of the constitution. But the law does not attempt to exempt corporations like this of the Darlington Manufacturing Company from assessment and taxation. Section 169, subd. 23, of the general statutes, requires the property of such companies to be assessed and taxed, and the tax to be paid, and then authorizes its return in whole or part. The constitution, in its terms, confines itself to the assessed value of all the taxable property, not that from which taxes are collected or levied. As a conclusion of law, the property of the Darlington Manufacturing Company was properly included in the assessed value of all the taxable property in the town of Darlington. And, as a conclusion of law dependent on this, the aggregate amount of these bonds being less than 8 per cent. of the assessed value of all the taxable property in the town of Darlington, their issue is not in conflict with section 17, art. 9, of the constitution.

It is further objected that these bonds were delivered in exchange for stock, and that, the stock having no real or marketable value, the condition that the bond should not be issued for less than par has not been fulfilled. The act of assembly authorizes the issue of bonds in aid of railroads. This aid can only be given in the shape of a subscription to the stock of the road, or as a gratuity. If it be in the shape of a subscription, the subscriber binds himself to pay the full amount of his subscription, and usually it is payable in cash. If he pay his subscription in bonds, dollar for dollar, with the amount of money of his subscription, his bonds are taken at par. Several persons had agreed to aid the town by subscribing for stock in the road. The town of Darlington required each subscriber to pay in cash the full value of the stock at par. If it be a gratuity, then the only question is, was the amount expended in the construction and equipment of the road equal to the par value of the bonds, whose proceeds paid it? It has been found as a fact that this was the case. So, in any view of this matter, the bonds were

disposed of at par. The certificate of stock practically operated as a receipt.

Applying these conclusions of law to the findings of fact, a verdict is found for the plaintiff in the sum of $6,873.60 and costs of this suit. Let judgment be entered accordingly.