## MERRILL v. MONTICELLO.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF INDIANA.

No. 125. Argued December 19, 22, 1890. — Decided March 2, 1891.

The implied power of a municipal corporation to borrow money to enable
it to execute the powers expressly conferred upon it by law, if it exists
at all, does not authorize it to create and issue negotiable securities, to
be sold in the market and to be taken by a purchaser freed from equities
that might be set up by the maker.

To borrow money, and to give a bond or obligation therefor which may 'cir-
culate in the market as a negotiable security freed from any equities
that may be set up by the maker of it, 'are essentially different transac-
tions in their nature and legal effect.

A municipal corporation in Indiana issued its negotiable bonds having ten
years to run, to the amount of $20,000, the proceeds to be used to aid in
the construction of a school house, and sold them in open market. When
they matured, a new issue of like bonds to the amount of $21,000 was
made, which were sold in open market, and a part of the proceeds con-
verted by a trustee of the corporation to his own use. *Held*, that the
new issue was void for want of authority, and that the municipality was
not estopped from setting up that defence.

THIS was an action at law by Abner L. Merrill, a citizen of
Massachusetts, against the town of Monticello, in the State of
Indiana, upon certain bonds and coupons issued by the town
and purchased by the plaintiff in open market.

The bonds and coupons were in form like the following:

"UNITED STATES OF AMERICA.

"No. 1. State of Indiana. $100.

"Funding Bond of the Town of Monticello.

"Ten years after date, the town of Monticello, in the county
of White, State of Indiana, promises to pay to the bearer, at
the Importers' and Traders' National Bank, New York, one
hundred dollars in gold, with interest thereon at the rate of
seven per cent per annum, payable annually, in gold, at the
same place, upon presentation of the proper coupon hereto.

attached, without any relief whatever from the valuation or appraisement laws of the State of Indiana. The principal of this bond shall be due and payable, at the option of the holder, on the non-payment, after due presentation, of any of said coupons, for ninety days after the maturity thereof. This bond is one of a series of $21,000, authorized by the said town by an ordinance passed by the board of trustees thereof, on the thirteenth day of May, 1878, for the purpose of funding the indebtedness of the said town.

"In witness whereof, the board of trustees of the town of Monticello have caused this bond and the coupons thereof to be signed by their president and clerk, and the seal of the town to be affixed hereto, at the said town of Monticello, this twentieth day of May, 1878.

"Attest: F. BOSINGER, *Clerk.*　R. W. CHRISTY, *President.*

[Copy of coupon.]

"The town of Monticello, Indiana, will pay the bearer, in gold coin, seven dollars, without relief from valuation or appraisement laws of the State of Indiana, at the Importers' and Traders' National Bank, New York, on the twentieth day of May, 1880, being one year's interest on bond No. 1.

"Attest: F. BOSINGER, *Clerk.*　R. W. CHRISTY, *President.*"

The coupons numbered 2, attached to each bond, having been presented for payment when due, at the place specified therein, and payment having been refused, the plaintiff, as the holder of 143 of the bonds with coupons attached, elected to declare the principal sum due, in accordance with the terms of the bonds, and, accordingly, on the 1st of July, 1881, brought this action to recover that amount.

A demurrer to the defendant's answer having been sustained, it filed an amended answer, in substance as follows: At the time the bonds in suit were issued the defendant was, and still is, a municipal corporation or town, duly organized under the laws of Indiana, in pursuance of a statute of that State passed June 11, 1852. On the 24th of June, 1869, a petition was presented to the board of trustees of the town by

the school trustees, praying for the issue of the bonds of the town to aid in building a school house; and on the same day the trustees of the town passed an ordinance directing that there be issued to the school trustees $20,000 worth of coupon bonds, of the denomination of $100 each, bearing 10 per cent interest, payable annually, which bonds, running ten years, were issued by the town May 1, 1869, and were afterwards sold in open market. The principal of them had not been paid, and they constituted the only indebtedness of the town, when, on the 11th of May, 1878, the following petition, signed by the owners of taxable property in the town, was presented to the town trustees:

"We, the undersigned, citizens of the town of Monticello, Indiana, and owners of the taxable property therein, respectfully petition that you, as trustees of said town, contract a loan for said town, for the purpose of paying the indebtedness thereof, in the sum of twenty-one thousand dollars."

On the same day the board of town trustees passed and entered of record the following ordinance:

"Be it ordained by the board of trustees of the town of Monticello, Indiana, That said town issue bonds in the sum of twenty-one thousand dollars, in denominations of one hundred dollars, bearing interest at the rate of seven per centum per annum, payable in gold, to provide the means with which to pay the indebtedness of said town. And be it further ordained, That when said bonds are issued they be placed in the hands of J. C. Wilson, a member of the board of trustees, for negotiation and sale. And be it further ordained, That said bonds shall not be sold at a price less than ninety-four cents on the dollar."

In pursuance of this ordinance, on the 20th of May, 1878, there were issued coupon bonds of the town to the amount of $21,000, bearing 7 per cent interest, payable annually, and due in ten years, being the same bonds a large amount of which are involved in this action. After the bonds were issued, they were delivered to said J. C. Wilson, who sold them and converted the proceeds thereof to his own use, the town not receiving any benefit therefrom.

The answer further alleged that on the 20th of May, 1878, when these bonds were issued, there was no law of the State of Indiana which authorized the trustees of an incorporated town in that State to issue its bonds for the purpose of funding its indebtedness, or to issue its bonds for negotiation and sale, for the purpose of paying its indebtedness or of raising money to pay its indebtedness; and that, at the date last above mentioned, the defendant was an incorporated town, organized under the general law of the State, for the incorporation of towns having a population of twelve hundred inhabitants.

A general demurrer to the amended answer, as not stating facts sufficient to constitute a good defence to the complaint, was overruled by Judge Gresham, in December, 1882, (14 Fed. Rep. 628;) and the plaintiff then filed a reply, that part of it material to this consideration being, in substance, as follows: After admitting the main facts stated in the answer respecting the issue and sale of the bonds of 1869, and also as to the issue of the bonds of 1878, here in suit, it was alleged that the bonds in suit were legal, having been authorized by an act of the state legislature, passed March 3, 1873; that the town was without means to pay its indebtedness except by the issue of its bonds, the tax levies permitted by law being insufficient for that purpose; that J. C. Wilson, as the agent of the town, under and by virtue of the authority conferred upon him by the aforesaid ordinance, negotiated the bonds in open market, and received from their sale the sum of $19,680.17, a part of which sum, to wit, $6618.10, he deposited in a bank in that town, and absconded with the remainder; that the town, by suit instituted for that purpose, recovered the aforesaid amount which had been deposited in the bank, and appropriated it to its own use; and that the plaintiff, in July, 1878, purchased 143 of the bonds (those in suit) in open market in Boston, at par for cash, without any notice or knowledge on his part that Wilson had not accounted to the town for the money received by him from the sale of the bonds.

A demurrer to the reply was overruled by Judge Woods, holding the Circuit Court, 22 Fed. Rep. 589. The case was

then tried before Judges Gresham and Woods, upon the merits, under a written stipulation, waiving a jury, judgment being given in favor of the defendant.

Plaintiff afterwards made a motion for a new trial, which was overruled by Judge Woods at the November term of the court, 1886. At the same time plaintiff again made a motion for a new trial, setting up, in substance, the following: That he had prepared a bill of exceptions setting forth all the evidence in the case, all of which, it was alleged, tended to support the declaration and the reply; that he was desirous of bringing the case to this court by writ of error, but, under the rules and practice here and the statutes of the United States, he would not be able to present the questions involved to this court, without a special finding of facts upon the evidence adduced at the trial; that a manifest hardship and injustice had been done him in the case, which occurred in the manner following: The judge who heard the case on demurrer to the answer held the answer sufficient, while another judge of the court, who heard the case on demurrer to the reply, pronounced the reply sufficient, and at the final hearing plaintiff, relying upon the evidence which supported and proved his reply, did not require or ask a special finding of facts, supposing, of course, that his reply having been proved, there would be a certificate of division in opinion between the judges who tried the cause, or that, if not so, he would have saved to him by the record the questions of law in some other proper manner; that the entry of the judgment took him wholly by surprise, and he had not saved the legal questions as he should have done, by requesting beforehand a special finding of facts, because having had his replication sustained, he had no doubt of the final judgment of the court being favorable to him; and that he was fearful he would be remediless to present to this court the questions involved in the case, unless the judgment should be set aside and a special finding of facts made by the court.

This motion was sustained by Judge Woods, over the objection of the defendant, and a new trial was granted. The case was again tried by Judge Woods, without a jury, who, at plaintiff's request, made and filed the following finding of

facts, and entered judgment thereon in favor of the defendant:

"1st. At the time hereinafter mentioned the defendant was a municipal corporation organized and existing under and by virtue of the laws of the State of Indiana, and situate in the county of White, in the said State.

"2d. That upon the 24th day of January, 1869, a petition was presented to the board of trustees of said town by the school trustees thereof praying for the issue of the bonds of said town to aid in the building of a school house in said town, which said petition was granted, and in pursuance thereof the trustees of said town did pass and adopt an ordinance directing that there should be made and issued to the said school trustees of said town twenty thousand dollars of coupon bonds of said town of the denomination of one hundred dollars each, with interest at the rate of ten per cent per annum, payable annually; and afterwards, to wit, on the 1st day of May, 1869, the said town executed the said bonds under said ordinance to the amount of $20,000, maturing in ten years after the date thereof, which bonds were sold and delivered to certain persons, who then and there became the purchasers thereof, and which bonds at the times hereinafter mentioned were outstanding, unpaid and valid obligations of the said town.

"3d. On the 11th day of May, 1878, a petition was presented to the board of trustees of the defendant, signed by citizens, owners of taxable property in said town, praying for the issue of bonds of said town, to the amount of $21,000, which petition (omitting the names of the signers thereto) is in the words following, to wit:

[Then follows the petition as set out in the answer, and heretofore quoted.]

"4th. That upon the 20th day of May, 1878, in pursuance of the said petition and ordinance, the said defendant town made and executed its 210 coupon bonds, payable to bearer, of the denomination of $100 each, bearing interest at the rate of seven per centum per annum, which bonds and coupons are in the words and figures following, to wit:

[Then follows a copy of a bond and a coupon heretofore set out·in full.]

"5th. That the said bonds were put in the hands of the said J. C. Wilson, in pursuance of said ordinance, for sale, and that $14,300 of the said bonds, being the same as those now in suit, were sold to Claypoole and Stoddard, of Indianapolis, Indiana, for which the said firm of Claypool and Stoddard paid to the said Wilson the sum of $12,918.40, which said last-named sum was paid to said Wilson in the following manner: On or about April 14, 1879, said Claypool and Stoddard, by the direction of said Wilson, paid a draft drawn by G. A. Ivers, of Chicago, for $6000; on the same day said Claypool and Stoddard paid said Wilson, by their check on the First National Bank of Indianapolis, the further sum of $5000; that on the 13th day of May, 1879, the said Claypool and Stoddard paid to said Wilson, by their check on the First National Bank of Indianapolis, the further sum of $1840.30, and within a few days after the last-named date said Claypool and Stoddard, for the balance of the said sum of $12,918.40, paid to him the sum of $78.17.

"6th. That the board of trustees of said town required and exacted from their said agent, J. C. Wilson, a bond, with sureties, to secure·the money which he might realize from the sale of·said bonds.

"7th. That the said Wilson, after the sale of said bonds, failed to turn over the proceeds thereof to the treasurer of·the said town and fled the country.

"8th. That at the time the said Wilson fled the country he had a large sum of money on deposit in the First National Bank of Monticello, Indiana, to his credit as 'trustee'; that suit was instituted by the defendant town against said bank to recover the same, upon the ground that such money was the proceeds of the sale of said bonds so made by the said Wilson; that judgment was rendered in favor of said town and against said bank for the sum of $6988.43; that thereupon the receiver of the said bank appealed to the Supreme Court of Indiana, and thereupon said judgment was affirmed by said Supreme Court — *Bundy, Receiver, &c. v. Town of*

*Monticello*, 84 Indiana, 119 — and said town recovered the sum of $6988.43.

"9th. That the said town instituted a proceeding upon the bond so given by the said Wilson to the said town to secure the money which he might realize from the sale of said bonds, and in a court of competent jurisdiction recovered judgment against the sureties and the said Wilson on the said bond for the full amount of the proceeds arising from the sale of said bonds, and from which judgment an appeal was taken to the Supreme Court of Indiana, and reported in 85 Indiana Reports, at page 10, and which said judgment was reversed and remanded by said Supreme Court for another trial, and afterwards the said suit was dismissed by the said town, and that the said town has received nothing on account of said bond.

"10th. That at the time of the issuing of the bonds in suit there was in the town treasury $3047.85, and no more, received under the taxing act of the legislature of Indiana, under which the bonds were issued, as a special fund for the payment of the $20,000 ten per cent. bonds then outstanding, and that under the laws of the State of Indiana a sum sufficient to pay said bonds could not have been raised before maturity of the same on the amount of taxable property in said town.

"11th. That the plaintiff is a resident of Newton, in the State of Massachusetts, and that he bought the bonds in suit in open market, in the city of Boston, as an investment, and paid therefor a valuable consideration, without any notice of any irregularity as to their issue or any claim to that effect.

"And the court further finds that the principal of the bonds sued on is wholly unpaid, and that the interest upon the same accrued is wholly unpaid from the 20th day of May, 1880.

"And the court further finds, as a conclusion of law upon the foregoing facts, for the defendant."

*Mr. Addison C. Harris* for plaintiff in error.

*Mr. David Turpie* and *Mr. William E. Uhl* for defendant in error.

MR. JUSTICE LAMAR, after stating the case as above reported, delivered the opinion of the court.

The decisive question presented by the record in this case is, did the town of Monticello have authority, under the laws of Indiana, to issue for sale in open market negotiable securities in the forms of the bonds and coupons on which recovery is here sought? Chancellor Kent, in his Commentaries, vol. 2, 298, 299, referring to the strictness with which corporate powers are construed, irrespective of the distinction between public and private corporations, uses the following language: "The modern doctrine is, to consider corporations as having such powers as are specifically granted by the act of incorporation, or as are necessary for the purpose of carrying into effect the powers expressly granted, and as not having any other. The Supreme Court of the United States declared this obvious doctrine, and it has been repeated in the decisions of the state courts. . . . As corporations are the mere creatures of law, established for special purposes, and derive all their powers from the acts creating them, it is perfectly just and proper that they should be obliged strictly to show their authority for the business they assume, and be confined, in their operations, to the mode and manner and subject matter prescribed."

Judge Dillon, in his work on Municipal Corporations, § 89, says: "It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident to* the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation — not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."

In *Hopper* v. *Covington*, 118 U. S. 148, 151, this court, in passing upon the power of incorporated towns in Indiana, under laws which we will have to consider and pass upon in this case, said, Mr. Justice Gray delivering the opinion : " When

the law confers no authority to issue the bonds in question, the mere fact of their issue cannot bind the town to pay them, even to a purchaser before maturity and for value. *Marsh* v. *Fulton County*, 10 Wall. 676; *East Oakland* v. *Skinner*, 94 U. S. 255; *Buchanan* v. *Litchfield*, 102 U. S. 278; *Dixon County* v. *Field*, 111 U. S. 83; *Hayes* v. *Holly Springs*, 114 U. S. 120; *Davies County* v. *Dickinson*, 117 U. S. 657."

In *Gause* v. *Clarksville*, 5 Dillon, 165, the court, in an able discussion of the inherent and incidental authority of municipal corporations, holds, that whether a municipal corporation possesses the power to borrow money, and to issue negotiable securities therefor, depends upon a true construction of its charter and the legislation of the State applicable to it.

In order to determine the question before us, recourse must be had to the statutory enactments, applicable to the subject, that were in force at the time the bonds in this suit were issued, in May, 1878. These enactments are contained in sections 3333, 3342, 3344, 3345, 4488 and 4489 of the Revised Statutes of Indiana of 1881. Sec. 3333 is a section of the act of 1852 for the incorporation of towns in that State, and contains the usual grant of municipal powers. Sec. 3342, which was also section 27 of the same act of 1852, provides as follows: "No incorporated town under this act shall have power to borrow money or incur any debt or liability, unless the citizen-owners of five-eighths of the taxable property of such town, as evidenced by the assessment roll of the preceding year, petition the board of trustees to contract such debt or loan. And such petition shall have attached thereto an affidavit verifying the genuineness of the signatures to the same. And for any debt created thereby, the trustees shall add to the tax duplicate of each year, successively, a levy sufficient to pay the annual interest on such debt or loan, with an addition of not less than five cents on the hundred dollars, to create a sinking fund for the liquidation of the principal thereof."

The other sections contain the provisions of certain statutes passed in 1867, 1869 and 1873. It is only necessary to quote here sections 4488 and 4489, as they embody the provision of the act of 1873, which is itself the statute of 1869 rewritten

in order to extend to other purposes not material to this inquiry.

"SEC. 4488. Any city or incorporated town in this State which shall, by the action of its school trustees, have purchased any ground and building or buildings; or may hereafter purchase any ground and building or buildings; or has commenced, or may hereafter commence, the erection of any building or buildings for school purposes; or which shall have, by its school trustees, contracted any debts for the erection of such building or buildings, or the purchase of such ground and building or buildings; or such trustees shall not have the necessary means with which to complete such building or buildings, or to pay for the purchase of such ground and building or buildings, or pay such debt, — may, on the filing, by the school trustees of said city or town, of a report, under oath, with the common council of such city, or the board of trustees of such town, showing the estimated or actual cost of any such ground and building or buildings, or the amount required to complete such building or buildings, or purchase such ground and building or buildings, or the amount of such debt, on the passage of an ordinance authorizing the same by the common council of said city, or the board of trustees of such town, issue the bonds of such city or town to an amount not exceeding, in the aggregate, fifty thousand dollars, in denominations not less than one hundred nor more than one thousand dollars, and payable at any place that may be designated in the bonds (the principal in not less than one year nor more than twenty years after the date of such bonds, and the interest annually or semi-annually, as may be therein provided) to provide the means with which to complete such building or buildings, or to pay for the purchase of such ground and building or buildings, and to pay such debt. Such common council or board of trustees may, from time to time, negotiate and sell as many of such bonds as may be necessary for such purpose, in any place and for the best price that can be obtained therefor in cash: *Provided*, That such bonds shall not be sold at a price less than ninety-four cents on the dollar.

"SEC. 4489. The proceeds of the sales of such bonds shall

be paid to the said school trustees, to enable them to erect or complete such building or buildings and pay such debt. But before payment to them, such school trustees shall file with the county auditor a bond, payable to the State of Indiana, in a sum not less than the full amount of the said money so to be paid to them, and with security to be approved by said auditor, conditioned for the faithful and honest application of such money to the purpose for which the same was provided; and such trustees, and their surety or sureties, shall be liable to suit on such bond for any waste, misapplication or loss of such money, in the same manner as now provided for waste or loss of school revenue."

We have given these sections in full to show the entire legislation of the State in 1878, upon the subject of the power of towns to borrow money, contract loans, incur debts and issue bonds, so that it may be the more clearly determined whether it anywhere expressly confers upon incorporated towns of the State the general power of issuing, for sale in open market, negotiable securities, in the form of bonds and coupons, which, in the hands of *bona fide* purchasers before maturity, will be subject to no legal or equitable defences in favor of the maker. In our opinion no such express power is given by these sections, either for the purpose of raising money or funding a previous indebtedness. Obviously, it cannot be found in sections 4488 and 4489, for they relate specifically and exclusively to bonds for school buildings, school grounds and school debts, and prescribe the mode by which bonds may be issued by towns for those specified objects — a mode confessedly not followed, or even attempted to be followed, in issuing the bonds in this suit. We are confirmed in this conclusion by the view taken in *Hopper* v. *Covington, supra :* "The averment, that the defendant is a municipal corporation under the laws of Indiana, 'with full power and authority, pursuant to the laws of said State, to execute negotiable commercial paper,' if understood as alleging a general power to execute negotiable commercial paper, is inconsistent with the public laws of the State, of which the courts of the United States take judicial notice."

The laws of Indiana referred to are those we are now considering. The court also says: "The general statute of May 15, 1869, authorized towns to issue bonds for the purchase and erection of lands and buildings for school purposes only." But the bonds in suit were not issued for either of the purposes named, but to retire and pay off the bonds of 1869. The town had no power to pay off those bonds in this way, viz. by the issue of new bonds, or it could perpetuate a debt forever. Bonds once issued for a lawful purpose must be paid by taxation. This is manifest from the provision which requires a tax to be levied each year "sufficient to pay the annual interest, with an addition of *not less* than five cents on the hundred dollars to create a sinking fund for the liquidation of the principal." When bonds are once issued for a lawful purpose, the town is *functus officio* as to that matter. To argue that the old bonds are a *debt* for school purposes which may be liquidated by new bonds is a refinement of construction which the sound sense of the law rejects.

The plaintiff in error relies mainly upon the ground that the authority in question arises, by necessary implication, from the power to make certain expenditures; from the character of the objects to be accomplished by those authorized expenditures; from the necessity of providing the means for paying a previous indebtedness lawfully incurred in such expenditures; and from other powers expressly granted. The line of his counsel's argument, and that of the district judge to whose opinion our attention has been especially called, is this: Whilst section 3342 (the same as section 27 in the act of May, 1852) is not in itself a substantive grant of power, it clearly evinces the legislative intent and understanding that the right to borrow money or otherwise incur any debt or liability might be implied as incidental to the express power given in that or any subsequent act containing not inconsistent provisions, and includes a case like this, where the power is necessary to prevent a default of payment of a previous debt, which it was authorized to create. It is insisted farther that it is the settled doctrine in Indiana that corporations take, by implication, all the reasonable modes of executing their express or substantive

powers which a natural person may adopt; and that, in the absence of positive restrictions, a corporation has the power to borrow money as an incident to such power.

Section 119, Dillon on Munic. Corp. 3d ed., lays down the Indiana law, on this subject, substantially as is contended for by the plaintiff in error. That section is as follows: "In *Indiana*, the doctrine is that corporations, along with the express and substantive powers conferred by their charters, take by implication all the reasonable modes of executing such powers which a natural person may adopt. It is a power incident to corporations, in the absence of positive restriction, to borrow money as means of executing the power." A large number of cases from the Supreme Court of Indiana are cited in a note to support the doctrine of the text. We think the proposition that, under the laws of Indiana, a town has an implied authority to borrow money, or contract a loan, under the conditions, and in the manner expressly prescribed, cannot be controverted.

But this only brings us back to the question, Does the implied power to borrow money or contract a loan carry with it a farther implication of power to issue funding negotiable bonds, for that amount, and sell them in open market, as commercial paper? Let us see. Sec. 3342 is unquestionably a limitation upon the power to borrow money. Its very language is that of mandatory negation. "No incorporated town shall have the power to borrow money, or incur any debt," unless certain conditions precedent are complied with. The conditions which the statute prescribes the statute means to be performed. There can be no legal borrowing, unless the statute is strictly followed. What does it prescribe? That there must be first a petition to the town trustees, which shall be signed by the citizen-owners of at least five-eighths of the taxable property of the town, whose signatures shall be verified by an affidavit to the petition. The prayer of the petition is required to be that the board of trustees shall contract such debt or loan. The board could not depart, in its action, from this legally required prayer of the petition without transcending its authority, and acting *ultra vires*. But the board did

depart from the prayer, for it did not borrow money, nor contract a loan; but it ordained, in so many words, that the town issue bonds for negotiation and sale at not less than ninety-four cents on the dollar. We think the words of Chief Justice Marshall, in *Head* v. *Providence Ins. Co.*, 2 Cranch, 127, 169, aptly characterize this transaction, and bear upon the points which are the subject of this controversy. Speaking of bodies corporate which have only a legal existence, he said: "The act of incorporation is to them an enabling act; it gives them all the power they possess; it enables them to contract, and when it prescribes to them a mode of contracting, they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated." See also *New York Firemen's Ins. Co* v. *Ely*, 5 Connecticut, 560; *McCracken* v. *City of San Francisco*, 16 California, 591, 619.

It is admitted that the power to borrow money, or to incur indebtedness, carries with it the power to issue the usual evidences of indebtedness, by the corporation, to the lender or other creditor. Such evidences may be in the form of promissory notes, warrants and, perhaps, most generally, in that of a bond. But there is a marked legal difference between the power to give a note to a lender for the amount of money borrowed, or to a creditor for the amount due, and the power to issue for sale, in open market, a bond, as a commercial security, with immunity, in the hands of a *bona fide* holder for value, from equitable defences. The plaintiff in error contends that there is no legal or substantial difference between the two; that the issuing and disposal of bonds in market, though in common parlance, and sometimes in legislative enactment, called a sale, is not so in fact; and that the so-called purchaser who takes the bond and advances his money for it is actually a lender, as much so as a person who takes a bond payable to him in his own name.

We think the case of *Police Jury* v. *Britton*, 15 Wall. 566, is directly and absolutely conclusive against the position of the plaintiff in error, on this point. It was an action upon coupons of certain bonds issued by the Police Jury of Tensas Parish, Louisiana, the validity of which the defendant denied,

upon the ground that they were issued without the authority
of any law of that State. It appeared that the Police Jury
had no express authority to issue the bonds in question; and,
if they had any authority of the kind, it must be implied from
the general powers of administration with which the said
Police Jury was invested. The question, therefore, directly
presented in that case was precisely the question directly pre-
sented in this case, viz. whether the trustees or representative
officers of a parish, county or other local jurisdiction, invested
with the usual powers of administration, in specific matters,
and the power of levying taxes to defray the necessary expen-
ditures of the jurisdiction, have an implied authority to issue
negotiable securities, payable in future, of such a character as
to be unimpeachable in the hands of *bona fide* holders, for the
purpose of raising money or funding a previous indebtedness.

The opinion of the court, delivered by Mr. Justice Bradley,
clearly illustrated the fundamental distinction between issuing
bonds merely as evidences of a debt or loan and issuing bonds
for negotiation and sale generally, with respect to the powers
of a municipal corporation. It said: "That a municipal cor-
poration which is expressly authorized to make expenditures
for certain purposes may, unless prohibited by law, make con-
tracts for the accomplishment of the authorized purposes, and
thereby incur indebtedness, and issue proper vouchers therefor,
is not disputed. This is a necessary incident to the express
power granted. But such contracts, as long as they remain
executory, are always liable to any equitable considerations
that may exist or arise between the parties, and to any modi-
fication, abatement or recission in whole or in part that may
be just and proper in consequence of illegalities, or disregard
or betrayal of the public interests. Such contracts are very
different from those which are in controversy in this case.
The bonds and coupons on which a recovery is now sought
are commercial instruments, payable at a future day and
transferable from hand to hand. . . . The power to issue
such paper has been the means, in several cases which have
recently been brought to our notice, of imposing upon coun-
ties and other local jurisdictions burdens of a most fraudulent

and iniquitous character, and of which they would have been summarily relieved had not the obligations been such as to protect them from question in the hands of *bona fide* holders. . . . It seems to us to be a power quite distinct from that of incurring indebtedness for improvements actually authorized and undertaken, the justness and validity of which may always be inquired into. It is a power which ought not to be implied from the mere authority to make such improvements." pp. 570, 571.

The plaintiff in error quotes from the opinion in that case, to support his contention, the following : " We do not mean to be understood that it requires, in all cases, express authority for such bodies to issue negotiable paper. The power has frequently been implied from other express powers granted. Thus, it has been held that the power to borrow money, implies the power to issue the ordinary securities for its repayment, whether in the form of notes or bonds payable in future." We think the significance of these sentences, as applicable to the facts of this case, can be clearly discerned from the following concluding sentences of the paragraph : " But in our judgment these implications should not be encouraged or extended beyond the fair inferences to be gathered from the circumstances of each case. It would be an anomaly, justly to be deprecated, for all our limited territorial boards, charged with certain objects of necessary local administration, to become the fountains of commercial issues, capable of floating about in the financial whirlpools of our large cities."

The same doctrine is presented most forcibly in the case of *The Mayor* v. *Ray*, 19 Wall. 468. In *Claiborne County* v. *Brooks*, 111 U. S. 400, 406, it was held that the statutes of Tennessee, which conferred upon counties in that State the power to erect a court-house, jail and other necessary county buildings, did not authorize the issue of commercial paper as evidence of or security for a debt contracted for the construction of such a building. Referring to the view of the court below in that case, which held that, as the county had power to erect a court-house, that power implied the power to contract out the work, and to issue negotiable bonds of a commer-

cial character in payment thereof, Mr. Justice Bradley, who delivered the opinion of the court, said: " We cannot concur in this view. The erection of court-houses, jails and bridges is amongst the ordinary political or administrative duties of all counties; and from the doctrine of the charge it would necessarily follow that all counties have the incidental power, without any express legislative authority, to issue bonds, notes and other commercial paper in payment of county debts and charges; and if they have this power, then such obligations issued by the county authorities and passing into the hands of *bona fide* holders would preclude the county from showing that they were issued improperly, or without consideration, or for a debt already paid; and it would then be in the power of such authorities to utter any amount of such paper, and to fasten irretrievable burdens upon the county without any benefit received. Our opinion is, that mere political bodies, constituted as counties are for the purpose of local police and administration, and having the power of levying taxes to defray all public charges created, whether they are or are not formally invested with corporate capacity, have no power or authority to make or utter commercial paper of any kind, unless such power is expressly conferred upon them by law, or clearly implied from some other power expressly given, which cannot be fairly exercised without it;" citing *Police Jury* v. *Britton*, 15 Wall. 566; *The Mayor* v. *Ray*, 19 Wall. 468.

In *Young* v. *Clarendon Township*, 132 U. S. 340, 347, many of the decisions bearing on this question were referred to, and the court said: "Even where there is authority to aid a railroad, and incur a debt in extending such aid, it is also settled that such power does not carry with it any authority to execute negotiable bonds, except subject to the restrictions and directions of the enabling act;" citing *Wells* v. *Supervisors*, 102 U. S. 625; *Claiborne County* v. *Brooks*, 111 U. S. 400; *Kelley* v. *Milan*, 127 U. S. 139.

In *Hill* v. *Memphis*, 134 U. S. 198, 203, it was held that the power conferred by statute on municipal corporations to subscribe for stock in a railway corporation did not include the

power to create a debt and issue negotiable bonds in order to pay for that subscription. In delivering the opinion of the court, Mr. Justice Field said: "Whilst a municipal corporation, authorized to subscribe for the stock of a railroad company, or to incur any other obligation, may give written evidence of such subscription or obligation, it is not thereby empowered to issue negotiable paper for the amount of indebtedness incurred by the subscription or obligation. Such papers in the hands of innocent parties for value cannot be enforced without reference to any defence on the part of the corporation, whether existing at the time or arising subsequently. Municipal corporations are established for purposes of local government, and in the absence of specific delegation of power cannot engage in any undertakings not directed immediately to the accomplishment of those purposes. Private corporations created for private purposes may contract debts in connection with their business, and issue evidence of them in such form as may best suit their convenience. The inability of municipal corporations to issue negotiable paper for their indebtedness, however incurred, unless authority for that purpose is expressly given or necessarily implied for the execution of other express powers, has been affirmed in repeated decisions of this court." All of the cases we have cited above were referred to in the opinion in that case as sustaining the doctrine therein laid down.

The logical result of the doctrines announced in the above cited cases, in our opinion, clearly shows that the bonds sued on in this case are invalid. It does not follow that, because the town of Monticello had the right to contract a loan, it had, therefore, the right to issue negotiable bonds and put them on the market as evidences of such loan. To borrow money, and to give a bond or obligation therefor which may circulate in the market as a negotiable security, freed from any equities that may be set up by the maker of it, are, in their nature and in their legal effect, essentially different transactions. In the present case all that can be contended for is, that the town had the power to contract a loan, under certain specified restrictions and limitations. Nowhere in the

statute is there any express power given to issue negotiable bonds as evidence of such loan. Nor can such power be implied, because the existence of it is not necessary to carry out any of the purposes of the municipality.

It is true that there is a considerable number of cases, many of which are cited in the brief of counsel for plaintiff in error, which hold a contrary doctrine. But the view taken by this court in the cases above cited and others seems to us more in keeping with the well recognized and settled principles of the law of municipal corporations. For, as is said in Dillon's Munic. Corp., (third ed.,) § 507 : "The frauds which unscrupulous officers will be enabled successfully to practice, if an implied and unguarded power to issue negotiable securities is recognized, and which the corporation or the citizen will be helpless to prevent, is a strong argument against the judicial establishment of any such power. And the argument is unanswerable, when it is remembered that in ascertaining the extent of corporate powers there is no rule of safety, but the rule of *strict* construction, and that such an implied power is not necessary, however convenient it may be at times, to enable the corporation to exercise its ordinary and usual express powers, or to carry into effect the purposes for which the corporation is created. We regard as alike unsound and dangerous the doctrine that a public or municipal corporation possesses the *implied power* to borrow money for its ordinary purposes, and, *incidental* to that, the power to issue commercial securities. The cases on this subject are conflicting, but the tendency is towards the view above indicated. The opinion of Mr. Justice Bradley, in a case before referred to, (*The Mayor* v. *Ray*,) evinces a thorough comprehension of the whole question, and, in our judgment, is sound in every proposition it advances, and must become the law of this country. This view is confirmed by the almost invariable legislative practice in the States to confer, when it is deemed expedient, upon municipalities and public corporations, in *express* terms, the power to borrow money or to issue negotiable bonds or securities."

In the case before us the power in question is not, in our

opinion, indispensable to the exercise of the express or implied powers conferred upon the town by law. The utmost that can be said is, that it was deemed more convenient or expedient to issue the bonds in that form than in the mode prescribed.

We think that the fact that the legislature of the State of Indiana, by the acts of 1867, 1869 and 1873, above referred to, expressly authorized towns in the same class as the defendant in error to issue bonds for certain specified purposes, under proper safeguards and limitations, is indicative of the legislative understanding that, without some such express statutory provisions, no power existed in the town to issue negotiable bonds, and sell them in open market.

The same may be said of the act of the legislature of that State which took effect August 24, 1879, expressly conferring upon the towns in that State power to fund their indebtedness by issuing bonds and negotiating them for that purpose, under certain specified terms, restrictions and limitations.

We are not unmindful that in several of the cases in the Supreme Court of Indiana, cited by counsel for plaintiff in error, there may be found abstract propositions, susceptible of a construction in support of the position he seeks to maintain. But we think this case is distinguishable from them all, in essential features, which except it from those general propositions, and leaves the conclusion which we have reached in harmony with them.

It is contended that the bonds sued on were issued practically for the purpose of taking the place of the prior bonds outstanding and unpaid, which represented a debt for the erection of a school building, and were, therefore, authorized by section 4488. This position is untenable. It cannot be reasonably contended that the bonds were issued under any of the sections relating to the negotiation and sale of bonds for school purposes. It is not even pretended that they were issued in accordance with the clearly defined conditions and restrictions imposed by those sections.

Nor do we think the fact that the town actually received a portion of the money arising from the sale of the so-called bonds (or, in legal contemplation, perhaps all of it, as it was

paid to the agent of the town,) estops the corporation from pleading a want of authority in the municipality to issue the instruments sued on. The original act of issuing the bonds for sale was not only unauthorized by law, but in disregard of its requirements, and no subsequent act of the town trustees could make it valid. Whether it could be a circumstance in favor of the equitable right of the holders of the bonds to recover from the municipality the money which they represent is a question not here for consideration. The suit was upon the bonds themselves, and for the reasons above stated we hold that there can be no recovery upon them.

*Judgment affirmed.*

Mr. Justice Brown was not a member of the court when this case was argued, and took no part in its decision.

The Chief Justice and Mr. Justice Brewer were not present at the argument, and took no part in the decision.